Filed 12/19/17

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>CARLOS DAVID SANCHEZ,<br><br>    Defendant and Respondent. | F071330<br><br>(Super. Ct. No. 1454803)<br><br>**OPINION** |

—ooOoo—

APPEAL from a judgment of the Superior Court of Stanislaus County.  Ricardo Cordova, Judge.

Diane Louise Nichols, under appointment by the Court of Appeal, for Defendant and Respondent.

Birgit Fladager, District Attorney, and Tanja Titre, Deputy District Attorney, for Plaintiff and Appellant.

—ooOoo—

This case involves a permanent anti-gang injunction obtained by the Stanislaus County District Attorney's Office (SCDA) in 2009, from the Stanislaus County Superior Court, against the Deep South Side Norteños (DSSN) street gang (also known as Deep South Side Modesto or DSSM) and 12 named members of the gang. Sanchez was not named in, served in, or a party to, the proceeding in which the injunction was granted. Nonetheless, in 2010, when he was 17 years old, Sanchez was served with the injunction by the Modesto Police Department, without prior notice or an opportunity to be heard on the question of whether he was a covered gang member. In 2013, he was arrested and charged with misdemeanor criminal contempt for allegedly violating the injunction. This appeal lies from that criminal contempt case.

Sanchez filed a motion to dismiss the contempt charge. He argued he was not an active gang member covered by the injunction and that enforcement of the injunction against him violated his right to procedural due process, under the Due Process Clause of the federal Constitution's Fourteenth Amendment. The trial court determined that the injunction burdened Sanchez's constitutionally-protected liberty interests, whereby Sanchez was entitled to some adequate predeprivation process to determine whether he was an active gang member covered by the injunction. Since no predeprivation process was available to Sanchez to challenge the SCDA's determination that he was covered by the injunction, the trial court concluded that enforcement of the injunction against him violated his right to procedural due process. In light of its conclusion, the court dismissed the misdemeanor criminal contempt charge predicated on the application of the injunction to Sanchez.

The People appeal the trial court's rulings. We will affirm. We emphasize, however, that our holding is limited. We decide only that the trial court properly found that application of the injunction to Sanchez under the circumstances of this case, violated his right to procedural due process, necessitating, in this instance, dismissal of

2.

the contempt charge.  Furthermore, since Sanchez has not challenged the facial constitutionality of any of the injunction's terms, our opinion does not speak to that issue.

## FACTS AND PROCEDURAL HISTORY

On July 2, 2014, Sanchez was charged by information with felony possession of concentrated cannabis (count 1; Health & Saf. Code, § 11357, subd. (a)); misdemeanor criminal contempt for violating "the terms of an injunction restraining the activities of a criminal street gang or any of its members," by associating with gang members (count 2; Pen. Code,[1] § 166, subd. (a)(9));[2] and misdemeanor driving while driving privilege was suspended or revoked (count 3; Veh. Code, § 14601.1, subd. (a)).[3]  Sanchez pleaded not guilty to counts 1 and 3, and demurred as to count 2.  On November 24, 2014, the trial court reduced count 1, the cannabis possession charge, to a misdemeanor pursuant to Proposition 47.  Thereafter, all pending charges were misdemeanors.

This appeal relates only to the misdemeanor contempt charge, which, as stated above, was predicated on an alleged violation of an anti-gang injunction.  The injunction at issue was the "Judgment of Permanent Injunction" (gang injunction or injunction) issued on September 11, 2009, by Judge John G. Whiteside in Stanislaus County Superior Court case No. 642033.  The trial court here took judicial notice of the Superior Court file pertaining to the proceeding in which the gang injunction was issued.

On July 29, 2014, Sanchez moved for an Evidence Code section 402 hearing and for an order dismissing the criminal contempt charge on grounds of procedural due process under the federal Constitution's Fourteenth Amendment, *Vasquez v. Rackauckas*

---

[1]    Subsequent statutory references are to the Penal Code unless otherwise specified.

[2]    At the time, section 166, subdivision (a)(9) was section 166, subdivision (a)(10). In 2014, section 166 was amended and subdivision (a)(10) was renumbered as subdivision (a)(9).  (Stats. 2014, ch. 99, § 1.)

[3]    The record indicates that the charge of driving while driving privilege was suspended or revoked was subsequently changed to driving without a license.  (Veh. Code, § 12500.)

(9th Cir. 2013) 734 F.3d 1025 (*Rackauckas*), and *Mathews v. Eldridge* (1976) 424 U.S. 319 (*Mathews*). Sanchez contended the injunction interfered with his constitutionally-protected liberty interests and, because he was not a party to the original injunction proceeding, due process required that he be afforded some kind of process before the injunction was enforced against him. The People filed an opposition and Sanchez filed a reply. The People thereafter filed supplemental points and authorities and Sanchez filed a response thereto.

On February 5, 2015, the court held a hearing on Sanchez's motion to dismiss. At the hearing, the court jointly considered Sanchez's instant motion to dismiss as well as similar motions in other misdemeanor contempt cases related to the same gang injunction (Sanchez was a defendant in some of the other cases as well). The court denied all the motions before it. Thereafter, on February 10, 2015, the court indicated it would reconsider its initial rulings on its own motion, in light of the *Rackauckas* case. The court calendared a hearing for this purpose on February 17, 2015.

In connection with the reconsideration hearing, the prosecutor sought to submit additional briefing for the court's consideration. The court inquired: "What issue do you need to brief that hasn't been briefed and opposed by both sides?" The prosecutor responded: "In what circumstances in the due process context is the court permitted to dismiss." The prosecutor indicated she wanted to expatiate on the point that "nothing was dismissed" in the *Rackauckas* case. The court responded that additional briefing on that point was unnecessary because *Rackauckas* had "a different procedural posture," in that it enjoined enforcement of an anti-gang injunction against a particular class of plaintiffs. The court also clarified that the parties would have the opportunity to present legal arguments at the reconsideration hearing. Specifically, the court stated it would announce a tentative ruling and then allow the parties to "argue whether [the tentative ruling was] appropriate."

4.

At the hearing to reconsider its prior denial of Sanchez's motion to dismiss, the court stated that after further deliberation it was inclined to reverse its earlier ruling. Noting the issues had already been briefed "ad infinitum," the court nonetheless solicited argument, observing the parties had notice that the court was relying on *Rackauckas* and *Mathews*. After hearing the parties' arguments, the court ruled that enforcement of the injunction against Sanchez violated his right to procedural due process and dismissed the contempt charge.

## **DISCUSSION**

### *Dismissal of the Misdemeanor Contempt Charge*

The People appeal the trial court's rulings. They argue the trial court erred in finding that enforcement of the gang injunction violated Sanchez's right to procedural due process. The People also contend the trial court further erred in dismissing the criminal contempt charge based on its determination that the injunction was unconstitutional as applied to Sanchez. Sanchez responds that the trial court correctly concluded that enforcement of the injunction against him violated procedural due process, and, in turn, properly dismissed the criminal contempt charge.

We review issues of law, including constitutional questions, de novo. (*Vo v. City of Garden Grove* (2004) 115 Cal.App.4th 425, 433; *People v. Cromer* (2001) 24 Cal.4th 889, 893-894.) We uphold the trial court's factual determinations as long as the record contains substantial evidence to support them. (*Cromer*, *supra*, at pp. 893-894; *People v. Lawler* (1973) 9 Cal.3d 156, 160.) Accordingly, we will review the trial court's legal conclusions regarding Sanchez's due process claim de novo and any factual determinations underlying its rulings for substantial evidence.

We will affirm the trial court. The trial court correctly found that application of the injunction to Sanchez, under the circumstances applicable here, violated his constitutional right to procedural due process. In other words, Sanchez was constitutionally entitled to greater procedural protections than were afforded by the

5.

SCDA in subjecting him to the injunction. Furthermore, since service in 2010 of the permanent injunction on Sanchez was invalid for denial of procedural due process, the trial court properly dismissed the contempt charge.

## I. Background

### A. *The Terms and Manner of Enforcement of the Gang Injunction*

California's Street Terrorism Enforcement and Prevention (STEP) Act, section 186.20 et seq., creates private and public causes of action for purposes of "enjoining, abating, and preventing" the "nuisance" that results when a "building or place" is "used by members of a criminal street gang" for committing criminal offenses. (§ 186.22a, subd. (a).) In addition, the "general public nuisance statutes," namely Code of Civil Procedure section 731 and Civil Code sections 3479-3480, provide an independent basis for enjoining a gang and its members from engaging in nuisance activity. (See *People ex. Rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1119.) The gang injunction at issue here arose from an action to abate gang activity under California's general public nuisance statutes.

On June 10, 2009, the SCDA filed a public nuisance action based on Code of Civil Procedure section 731 and Civil Code sections 3479 and 3480, in the Stanislaus County Superior Court (case No. 642033). The action named as defendants "Deep South Side Norteños" (*also known as* "'DSSN,' Deep South Side Modesto, 'DSSM,' Deep South Side Locos, 'DSSL,' Deep South Side Youngsters, 'DSSY'"); 20 named individuals; and Does 1-100. On September 9, 2009, all Doe defendants were dismissed; furthermore, several of the named defendants were never served and were also voluntarily dismissed from the action. The superior court determined that no defendant had appeared in the action and that defaults were properly "entered against all named and served defendants." The court then entered, on September 11, 2009, a "Judgment of Permanent Injunction" "in favor of plaintiff, the People of the State of California, ex. rel. Birgit Fladager as the District Attorney of the County of Stanislaus," and against defendants "Deep South Side

6.

Norteños, aka 'DSSN,' Deep South Side Modesto, 'DSSM,'" as well as 13 named individual defendants.[4] In entering the "Judgment of Permanent Injunction" (gang injunction or injunction), the court orally noted: "The served members of the gang are subject to criminal contempt of court for violation of the terms of the order."

The injunction permanently enjoins the defaulted defendants from engaging in a range of lawful and unlawful activities in a so-called "Safety Zone" delineated by certain streets, roads, and avenues in the City of Modesto. The People aver that the Safety Zone is a 1.89 square mile area comprising five percent of the City of Modesto. The area within the Safety Zone includes the neighborhood in which Sanchez lives; his family has lived and owned a house in the Safety Zone since 1978.

The injunction prohibits some potentially unlawful conduct in the Safety Zone, such as "[c]onfronting, intimidating, annoying, harassing, threatening, challenging, provoking, assaulting or battering any person known to be a witness to any activity of the 'DSSN'" and "[m]aking any threats, or doing anything threatening, including striking or battering a person, destroying or damaging personal property, or disturbing the peace, to cause or encourage a person to join 'DSSN.'" However, the injunction's prohibitions extend well beyond unlawful conduct to proscribe many quotidian, day-to-day activities that, in many instances, have nothing to do with gang-related activity.

For example, the injunction subjects enjoined persons to a daily nighttime curfew. Specifically, the injunction's curfew provision prohibits persons 18 years of age or older from being in a public place within the Safety Zone "between 10:00 p.m. and sunrise," except for work, school, or an emergency. As for persons under 18 years of age, the injunction's curfew provision prohibits them from being in a public place in the Safety Zone "between 8:00 p.m. on any day and sunrise, unless accompanied by a parent." The

---

[4] One of the named defendants appears accidentally to have been included in the judgment, as the judgment itself specifies he was not served in the action.

injunction's "Do Not Associate" prohibition proscribes persons subject to the injunction from associating with other enjoined persons, including "[s]tanding, sitting, walking, driving, gathering[,] or appearing anywhere in public view or any place accessible to the public." The "Do Not Associate" prohibition makes an exception for gatherings inside schools or places of worship but not for any travel to and from the latter locations. The injunction also prohibits "[w]earing the color red in various ways including but not limited to red hats, bandanas, shirts, sports jerseys, pants, belts, shoes, shoelaces, and wearing anything with the words 'Deep South Side.'"

The injunction further prohibits all persons subject to the injunction from "[a]nywhere in public view or any place accessible to the public, (1) possessing an open container of an alcoholic beverage, (2) knowingly remaining in the presence of anyone possessing an open container of an alcoholic beverage, or (3) knowingly remaining in the presence of an open container of an alcoholic beverage." The injunction also prohibits an enjoined person who is "a pedestrian," from "approaching, signaling, talking to the occupants of, or blocking the movement of, any vehicle on any street unless a legitimate emergency situation dictates." In addition, possession of a "felt tip marker" or "spray paint can" is prohibited by the injunction. Finally, the injunction is permanent, with no expiration date or sunset provision.

As discussed in more detail below, the record demonstrates that the SCDA has served the injunction on numerous individuals who were not named or served in the original injunction proceeding but who subsequently were deemed to be covered gang members by the SCDA. As counsel for the People acknowledged at oral argument, a gang investigator with the SCDA, Froilan Mariscal, who "authored" the gang injunction and serves as the "injunction manager," alone decides which individuals are covered gang members and directs the Modesto Police Department to serve these individuals with the gang injunction. There is no process for individuals who are subjected to the injunction to challenge Mariscal's unilateral determination that they are covered gang

8.

members prior to being arrested and prosecuted for alleged violations of the injunction. The record further indicates that the SCDA does not have in place any systematic review mechanism or formal removal procedure, whereby a person subjected to the injunction may subsequently be removed from its purview.

Sanchez was not a party to the civil proceeding in which the injunction was granted. He was not served in or given notice of that litigation, and, furthermore, was a minor at the time of that litigation. Subsequently, on August 17, 2010, when Sanchez was 17 years old, Modesto Police Officer Brian Binkley served him with the permanent injuction.[5] Binkley testified about serving Sanchez with a copy of the injunction at a suppression hearing in another misdemeanor criminal contempt case, which was pending against Sanchez at the same time as the instant case and was before the same judge.[6]

---

[5] Sanchez's date of birth is April 23, 1993.

[6] We take judicial notice of the transcript of that suppression hearing in Stanislaus County Superior Court case No. 1450035, held on June 16, 2014, before Judge Ricardo Cordova, who also presided over the instant case. (See Evid. Code, §§ 452, 459.) At the June 16, 2014 hearing, Binkley described the incident underlying the contempt charges in that case. Binkley testified that on August 31, 2012, at around 11:22 p.m., he and his partner were driving in the Safety Zone when they saw a car go by in the opposite direction. They caught up to the car at a stop sign. Binkley's partner got out and shone a spotlight into the car, whereupon the officers saw Sanchez in the front passenger seat. Binkley recognized Sanchez, as Binkley had served him with the gang injunction. Thereupon, the officers initiated a traffic stop on grounds that Sanchez was in violation of the injunction's curfew provision. After initiating the traffic stop, the officers saw Sanchez's cousin, Francisco Vasquez, in the car as well, and Binkley recalled that Vasquez had also been served with the injunction (Binkley's partner testified that he had in fact served Vasquez with the injunction when Vasquez was a minor). The officers arrested Sanchez for violating the curfew provision of the injunction and for associating with another enjoined person (i.e., his cousin), leading to Sanchez's prosecution for criminal contempt of the injunction.

At the suppression hearing, the trial court was concerned that the police lacked probable cause to make the underlying traffic stop in the first instance, because the curfew provision of the gang injunction contains exceptions for work and school. The prosecutor argued: "This case, the officers were in the Safety Zone, observed the vehicle, stopped the vehicle[,] … [i]mmediately spotlighting the vehicle, recognized a person that

9.

Binkley testified that he served Sanchez with the injunction on instructions from the SCDA. He testified that Froilan Mariscal gave him "a list of subjects" who were to be "served with the permanent gang injunction." Binkley testified that he served Sanchez with an injunction "packet," which included a copy of the gang injunction, a "list of prohibited actions," and a map of the Safety Zone. Binkley subsequently "turned in" the proof of service paperwork, either to the SCDA or the Modesto Police Department. Binkley testified that he keeps a "list of all of the subjects that have been served with the permanent gang injunction" and is familiar with the boundaries of the Safety Zone. He also said police officers can ascertain whether a specific person has been served with the gang injunction by running a records check through dispatch. Binkley confirmed that Sanchez and his family members lived within the Safety Zone.

Officer Mark Fontes testified at the same hearing regarding service of the injunction packet: "We give [the served persons] a list of the violations, which are 14 of the violations, which they cannot commit while in the Safety Zone. And then there's also a map that outlines the Safety Zone and shows the perimeters of it. Usually I'll go through it or kind of read the violations over with them and let them know that as of that point on, they're not to commit any one of those violations while within these perimeters of the Safety Zone."

### B. The Instant Criminal Contempt Action

The complaint initiating the instant case was filed on February 28, 2013. The complaint alleged that Sanchez had violated the gang injunction on January 31, 2013. Evidence regarding the underlying facts was adduced at the preliminary hearing in the

---

they knew to be on the gang injunction that they knew to be [within] the Safety Zone, [therefore] they had probable cause to stop the vehicle." The trial court disagreed because "the officer did not have any basis to determine that [Sanchez was] not subject to the exception of the gang curfew of being out past 10:00 PM." The trial court granted Sanchez's motion to suppress evidence regarding contempt charges stemming from that particular traffic stop.

10.

matter.[7] On January 31, 2013, at 2:00 p.m., Sanchez was driving on a public roadway within the Safety Zone. Sanchez was stopped by law enforcement because of loud music emanating from his car. When asked whether he was on probation or parole, Sanchez answered in the negative but told the officer he had been served with and subjected to the gang injunction that covered the local area. One of the passengers in the car, a minor, told the officer that he too had been served with the gang injunction. The officer arrested Sanchez and the minor, as both had been served with the gang injunction, and the officer believed that, as a result, they were prohibited from appearing in public together. The officer also arrested them on account of a red jacket he saw in the car (the minor passenger was possibly wearing the red jacket), as the injunction prohibits wearing red clothing.[8] Sanchez was taken to jail and his car was impounded; the minor who was with him in the car was booked into juvenile hall. Subsequently, the instant criminal contempt action was initiated, charging Sanchez with violating the gang injunction by associating with another enjoined person.

Sanchez had advised the arresting officer during the traffic stop that he was not a gang member and should not be subjected to the gang injunction. A gang expert appointed by the court on behalf of Sanchez in this matter also opined in an expert report filed with the court: "Carlos David Sanchez is not a gang member, and furthermore, I

[7] Since Sanchez was also charged with felony cannabis possession in this matter, the court held a preliminary hearing; the felony charge was later reduced to a misdemeanor under Proposition 47.

[8] The officer also found what was later determined to be 0.66 grams of concentrated cannabis in the trunk of the car. The officer conducted a "DUI evaluation" on Sanchez but determined that Sanchez was not under the influence at the time. Sanchez subsequently moved for dismissal of the misdemeanor cannabis possession charge resulting from the discovery of the 0.66 grams of concentrated cannabis on grounds that he was a qualified medicinal cannabis patient with a valid physician's recommendation for the use of medicinal cannabis. The trial court denied the motion on grounds that the question whether Sanchez was a "medical marijuana patient" was "an issue of fact that would [properly] be resolved at trial."

11.

believe he has never been a member of the DSSN gang, or any other gang." The gang expert further noted: "Prior to Mr. Sanchez being served with a gang injunction, he had never been arrested. In fact, it appears that the gang injunction, as it applies to Mr. Sanchez, has activated and given him an arrest record that never existed before he was served."[9]

Sanchez moved to dismiss the contempt charge on grounds that the underlying injunction was unconstitutional as applied to him. Specifically, he argued that under the circumstances of this case, he was subjected to the injunction in violation of his right to procedural due process under the federal Constitution. The trial court evaluated Sanchez's procedural due process claim under the *Mathews* balancing test and concluded that, on the instant record, Sanchez had a due process right to a predeprivation remedy. (See *Mathews*, *supra*, 424 U.S. 319.) The court determined that since there was no predeprivation remedy available to Sanchez, the injunction could not be enforced against Sanchez and dismissed the contempt charge.

---

[9]     In addition to case No. 1450035 (discussed above), in which Sanchez was charged with violating the injunction by appearing in public with his cousin, Sanchez was evidently charged in seven other cases for various alleged violations of the injunction. In case No. 1468072, for example, Sanchez was stopped by police while driving home from church with his brother, Sergio Sanchez (who had also been served with the injunction). Sanchez was arrested, booked into jail, had to post bail, and was ultimately charged with violating the injunction on grounds of associating with another enjoined person (i.e., his brother). In other cases, for instance case Nos. 1471084 and 1471881, Sanchez was arrested and charged with violating the injunction for wearing, respectively, a black-and-red shirt and red shoes. In the trial court, in light of the facts of case Nos. 1450035 and 1468072, Sanchez argued that, under the injunction, he was subject to "arrest[] for associating with his family members, all of whom live within the 'safety zone' designated by the gang injunction." He also argued that the fact that "he is seen with his family is considered proof by the prosecution that he is a gang member."

12.

**II.     Analysis**

*A.     Constitutionality of the Gang Injunction as Applied to Sanchez*

(1)     <u>The Applicable Framework for Analyzing the Procedural Due Process Claim and the Trial Court's Analysis Thereunder</u>

Under California's general nuisance statutes (Code Civ. Proc., § 731; Civ. Code, §§ 3479-3480), a gang and its members can be enjoined from engaging in nuisance activity. (*People ex rel. Gallo v. Acuna, supra,* 14 Cal.4th at p. 1119.) California courts are, however, divided on the issue of whether a permanent injunction binds a gang and all its active members when the latter are not individually named and served in the injunction proceeding. (See *People ex rel. Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31, 39-43 (*Colonia Chiques*) & *People ex rel. Reisig v. Broderick Boys* (2007) 149 Cal.App.4th 1506, 1522 (*Broderick Boys*).) Sanchez, however, does not challenge the process by which the gang injunction was obtained or its applicability to named defendants and active gang members based on technical service requirements. Nor does he challenge the facial validity of any of the provisions of the injunction. Sanchez instead challenges application of the gang injunction to him on procedural due process grounds.

In *Rackauckas*, *supra*, 734 F.3d 1025, the Ninth Circuit addressed a similar due process challenge to enforcement of an anti-gang injunction in Orange County. *Rackauckas* was the first case, state or federal, to address this particular type of due process challenge. *Rackauckas*, however, considered the due process question in a different context than the instant case, as there a certified class of plaintiffs sought to permanently enjoin the Orange County district attorney from enforcing the anti-gang injunction against them. The *Rackauckas* plaintiffs were named in the original gang injunction proceeding but, after they appeared in that action, they were voluntarily dismissed by the Orange County district attorney. The Orange County district attorney nonetheless later served the permanent gang injunction on the plaintiffs. *Rackauckas*

13.

explained that dismissal of the plaintiffs from the original injunction proceeding deprived them of an available predeprivation remedy and, prior to being subjected to the injunction, they were not provided with any "alternative adequate process" to determine whether they were covered by the injunction, as was constitutionally required. (*Rackauckas*, *supra*, 734 F.3d at p. 1056 ["*some* adequate process to determine membership in the covered class is constitutionally required"].) *Rackauckas* concluded that enforcement of the injunction against the plaintiffs in that case would violate their rights to procedural due process and permanently enjoined its enforcement against them.

Sanchez does not seek permanently to enjoin enforcement of the gang injunction against him or others. Rather, as stated above, he challenges, on procedural due process grounds, its application to him in this specific instance. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning[, in the case of states,] of the Due Process Clause of … the Fourteenth Amendment." (*Mathews*, *supra*, 424 U.S. at p. 332.) Although the procedural posture of this case is different from that of *Rackauckas*, the injunctions at issue in both cases are very similar and the due process claims are analogous. Furthermore, while *Rackauckas's* holding is limited to the circumstances of its plaintiffs—who were initially named as defendants in the original injunction proceeding but, after appearing in the action, were voluntarily dismissed—for purposes of the requisite due process analysis, we see no meaningful distinction between Sanchez's situation and that of the *Rackauckas* plaintiffs.

As explained in *Rackauckas*, courts analyze a procedural due process claim under the federal Constitution in two steps, evaluating, in the first step, "'whether there exists a liberty or property interest which has been interfered with by the State,'" and, in the second, employing the balancing test of *Mathews* to ascertain "'whether the procedures attendant upon that deprivation were constitutionally sufficient.'" (*Rackauckas*, *supra*, 734 F.3d at p. 1042, citing *United States v. Juvenile Male* (9th. Cir. 2012) 670 F.3d 999,

14.

1013 (*Juvenile Male*); see *Iraheta v. Superior Court* (1999) 70 Cal.App.4th 1500 [applying the *Mathews* framework in determining that named defendants in civil gang injunction proceeding were not entitled to counsel on due process grounds].)  In applying the *Mathews* balancing inquiry in the second step of the due process analysis, courts consider:  (1) "the private interest that will be affected by the official action"; (2) "the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews*, *supra*, 424 U.S. at p. 337.)

In conducting the requisite two-step analysis, *Rackauckas* determined, at the first step, that the gang injunction at issue in that case "profoundly implicate[d] liberty interests protected by the Due Process Clause, including rights of free movement, association, and speech," and that the enforcement of that injunction by the Orange County district attorney's office "interfere[d] with those protected liberty interests." (*Rackauckas*, *supra*, 734 F.3d at p. 1042.)  In the second step of the due process analysis, *Rackauckas* applied the three-factor balancing test explicated in *Mathews* to examine "'whether the procedures attendant upon [Orange's] deprivation' of Plaintiffs' liberty interests 'were constitutionally sufficient.'" (*Rackauckas*, *supra*, 734 F.3d at p. 1044.) *Rackauckas* found that "[a]ll the *Mathews* factors, taken together, weigh[ed] decisively in favor of Plaintiffs," and determined that "the district court correctly concluded that Orange violated Plaintiffs' rights under the Due Process Clause of the federal Constitution." (*Rackauckas*, *supra*, 734 F.3d at p. 1053.)  *Rackauckas* therefore affirmed "the district's court issuance of declaratory and injunctive relief in Plaintiffs' favor." (*Rackauckas*, *supra*, 734 F.3d at p. 1053.)

In the instant matter, in considering Sanchez's motion to dismiss (along with similar motions in other criminal contempt cases related to the injunction), the trial court

15.

noted: "My concern is the due process issue as to who can decide whether or not someone can be arrested for a gang injunction and be booked into jail, stay in jail, or post bail." Thus, the question for the court to resolve was whether due process required that Sanchez have access to some kind of predeprivation process to determine whether he was an active DSSN gang member for purposes of the injunction. The court explained that prior California cases dealing with gang injunctions "did not involve due process challenges" akin to the one presented here, but *Rackauckas* was on point. Specifically, the court stated, "it's pretty clear that these cases, with respect to the gang injunction, are on all fours with *Rackauckas* with the exception there was no file and dismiss strategy involved with these defendants. The due process argument[s] with that difference in procedural posture are, in fact, the same that are raised here."

The trial court conducted the two-step due process analysis outlined in *Rackauckas* to assess whether subjecting Sanchez to the injunction violated procedural due process. The court initially found that, given the broad scope of the injunction, the state had interfered with protected liberty interests, triggering due process scrutiny. The court then conducted the *Mathews* inquiry to determine whether the existing procedure utilized by the SCDA in enforcing the injunction was constitutionally sufficient. In conducting its analysis, the court observed:

> "And I don't have any doubt that the [district attorney] and law enforcement have a strong and important interest in controlling gangs in this particular neighborhood. Obviously, this neighborhood in particular has been placed in a strangle hold based on the activities of various gangs.

> "My concern is that – this dawned on me as I was driving home the last day after the court hearing, and I left from work, I made a stop somewhere, and had I been subject to the gang injunction and lived in that area, then I could have been stopped for doing an activity that all of us do as a part of our daily lives. There's curfew violations, there's, you know, someone comes back late from a family wedding; someone goes to their younger brother's football game at Downey High School, comes home after the curfew, and this covers a large activity – a large number of activities in

a large geographical area. It is permanent, and I'm – frankly, getting arrested and going to trial is an insufficient due process remedy.

"And as indicated in *Rackauckas*, determining whether someone is a gang member is not a simple task. Someone can be out with someone else based on a familial relationship or friends from the neighborhood that may not be gang related. In fact, two of the defendants here are, in fact, cousins subject to this injunction since they [were] both … served a copy of the order."

The court specifically asked the prosecutor to address the government's interest, if any, in failing to provide a predeprivation remedy, commenting that the third *Mathews* factor "is probably the closest argument that can be made." The court noted that Stanislaus County undoubtedly had a significant interest in combatting gang violence, but emphasized that "[t]he question is whether the government has a significant interest in failing to provide a pre-deprivation process where someone can challenge the determination of active gang membership." The prosecutor was unable to identify *any* governmental interest in failing to provide such a predeprivation remedy. The prosecutor did *not* suggest, for instance, that provision of a predeprivation hearing would be unduly burdensome or infeasible.

The court then laid out its concerns: "Bad facts obviously affect changes in the law.… [H]ere we have an injunction that covers a large geographic area that covers a lot of activity that we all take for granted, and there is no procedural … way the defendants can challenge whether or not they should have been subject to this gang injunction since it's permanent [and] any appeal period or any right to intervene [in the original injunction proceeding] would have long passed." The court ultimately determined that the *Mathews* factors weighed in favor of the conclusion that the SCDA had violated due process by failing to provide some kind of predeprivation remedy to Sanchez. As discussed below, on the instant record, we agree with the trial court.[10]

---

**10** The People argue that *Mathews* is inapplicable to the instant case. Rather, citing *Medina v. California* (1992) 505 U.S. 437, 443-446, the People posit that Sanchez's due

(2)    Step One in the Due Process Analysis: Whether there Exists a
       Liberty or Property Interest which has Been Interfered With by the
       State?

The instant gang injunction applies to the Safety Zone, a 1.89 square mile area comprising five percent of the City of Modesto. The Safety Zone includes residential neighborhoods in South Modesto; indeed Sanchez lives and has grown up within the Safety Zone. The injunction is very similar to, and appears to be modeled on, the injunction at issue in *Rackauckas*, which the *Rackauckas* court found "profoundly implicat[ed] liberty interests protected by the Due Process Clause, including rights of free movement, association, and speech." (*Rackauckas*, *supra*, 734 F.3d at p. 1042 [noting that the injunction pertinent to that case "places a heavy burden" on the exercise of a range of constitutionally-protected liberty interests within the ambit of the First Amendment, which have "always been viewed as fundamental components of the liberty safeguarded by the Due Process Clause"].) Just like the gang injunction at issue in *Rackauckas*, the instant injunction implicates, on its face, constitutionally-protected liberty interests and fundamental rights, including the rights of association, free movement, and free speech.[11]

For example, the "Do Not Associate" provision prohibits anyone subject to the injunction from associating with any other enjoined parties—including family members—"anywhere in public view or [in] any place accessible to the public." This

---

process claim must be analyzed under the standard enunciated in *Patterson v. New York* (1977) 432 U.S. 197, 201-202. We reject this argument because *Medina* and *Patterson* addressed the analytical framework for assessing the constitutionality of state procedural rules, which are part of the criminal process. Sanchez does not challenge California criminal procedures but, rather, argues he was subjected to a civil public nuisance injunction in violation of his right to procedural due process. This claim is appropriately analyzed under *Mathews*.

11    Since Sanchez does not challenge the facial constitutionality of the injunction's terms, we address the scope of these terms only as necessary to evaluate Sanchez's procedural due process claim.

18.

provision extends to "[s]tanding, sitting, walking, driving, gathering or appearing." In addition, the injunction establishes curfews for both minors and adults, prohibiting nighttime presence in any "public place" except for "work, school or an emergency." The injunction also proscribes enjoined persons from possessing alcohol in public view or a public place and from "approaching … any vehicle on any street," when walking. As *Rackauckas* explains, "[t]hese provisions directly interfere with an individual's 'fundamental right of free movement,'" and "an 'individual's decision to remain in a public place of his choice.'" (*Rackauckas*, 734 F.3d at p. 1042.)

Other provisions of the injunction further restrict freedom of movement and use of public places because of the actions of others, over which one may have no control, and do so without regard to whether the other person is an enjoined gang member. For example, the "Stay Away From Alcohol" provision prohibits an enjoined party from "knowingly remaining in the presence of anyone possessing an open container of an alcoholic beverage" and "knowingly remaining in the presence of an open container of an alcoholic beverage," "[a]nywhere in public view or any place accessible to the public." Similarly, the "No Guns or Dangerous Weapons" provision prohibits "knowingly remaining in the presence of anyone who is in possession" of "any gun, ammunition, illegal weapon" or "replica or imitation weapon," and "knowingly remaining in the presence of such gun, ammunition, or dangerous weapon," "[a]nywhere in public view or any place accessible to the public."[12] The "Stay Away From Drugs" provision also proscribes "knowingly remaining in the presence of anyone selling, possessing, or using any controlled substance or … related paraphernalia" and "knowingly remaining in the presence of any controlled substance or … related paraphernalia."

The "Do Not Associate" provision and other limitations on association have no exceptions to permit individuals to engage in constitutionally-protected expressive

---

[12]    The injunction refers to "replica or imitation" weapons as defined in section 417.4.

activities for political, social, and economic ends. (*Rackauckas*, 734 F.3d at p. 1043.) The "Do Not Associate" prohibition also burdens the constitutionally-protected freedom of "intimate association" by barring association with family members (who are also enjoined by the injunction) in public places such as streets and highways, restaurants, workplaces, and shops, but also at home if "in public view." (*Rackauckas*, 734 F.3d at p. 1043.) Finally, the prohibition on wearing red clothing and "anything with the words 'Deep South Side'" possibly restricts freedom of expression, and the prohibition against "talking to the occupants of … any vehicle on any street" restricts freedom of speech. (See *Rackauckas*, 734 F.3d at p. 1043.)

On the basis of the injunction's terms alone, its application clearly burdens and interferes with constitutionally protected liberty interests, especially as to persons like Sanchez, who live within the Safety Zone and whose families historically have lived within the Safety Zone. However, in addition to the injunction's restrictive terms, the manner of enforcement of the injunction constitutes further interference with liberty interests, triggering due process scrutiny. The record shows that law enforcement authorities in Modesto track persons served with the injunction by running records checks. It indicates that persons suspected of violating the injunction on the basis of otherwise lawful conduct are not merely cited and released; rather they are arrested, booked into jail, and prosecuted for criminal contempt of the injunction. In the instant case, Sanchez was the subject of a traffic stop. Law enforcement officers arrested and took into custody Sanchez and his minor passenger because they were both subject to the injunction and were together in the Safety Zone, allegedly in violation of the "Do Not Associate" provision of the injunction; Sanchez's car was also impounded.

Here, the SCDA's curtailment of Sanchez's constitutionally-protected liberty interests by deeming him a covered gang member and subjecting him to the injunction, constituted governmental interference, triggering due process scrutiny. (*Rackauckas*, *supra*, 734 F.3d at p. 1044.) We must therefore examine whether SCDA was required to

20.

provide additional procedural protections, beyond its existing unilateral process, before subjecting Sanchez to the injunction.

          (3)     <u>Step Two in the Due Process Analysis: the *Mathews* Balancing Inquiry</u>

As stated above, in the second step of the due process inquiry, we apply the balancing framework outlined in *Mathews*, *supra*, 424 U.S. 319 to assess whether the procedures attendant upon the deprivation of Sanchez's liberty interests were "'"'constitutionally sufficient."'"'" (*Juvenile Male*, *supra*, 670 F.3d at p. 1013.) As previously noted, *Mathews* sets forth a three-factor test for evaluating the sufficiency of existing procedures, directing us to examine:

> "[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (*Mathews*, *supra*, 424 U.S. at p. 335.)

In applying the *Mathews* balancing test, we recognize that "'the requirements of due process are "flexible and call for such procedural protections as the particular situation demands."'" (*Rackauckas*, *supra*, 734 F.3d at p. 1044; *Today's Fresh Start, Inc. v. Los Angeles County Office of Educ.* (2013) 57 Cal.4th 197, 212 (*Today's Fresh Start*) [the precise dictates of due process are flexible and vary according to context].) "'The function of legal process, as that concept is embodied in the Constitution, and in the realm of factfinding, is to *minimize the risk of erroneous decisions*. Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error.'" (*Heller v. Doe* (1993) 509 U.S. 312, 332 (italics added).) The governmental

decision at issue here is the SCDA's decision to subject Sanchez to the injunction based on its internal determination that he is a covered gang member.

*(a) The private liberty interest affected by the injunction*

As reflected in our earlier analysis of the liberty interests curtailed by the injunction, the private interest at issue here is notably strong. While the injunction prohibits a range of unlawful and undesirable conduct, it sweeps more widely than simply restricting gang-related activities. Indeed, it restricts basic liberties and rights of the individuals subjected to it, interfering with their ability to engage in common, day-to-day, lawful activities. The injunction is particularly onerous on someone like Sanchez, who lives in the affected area, along with members of his family. The burden on the private liberty interests is compounded by the fact that the injunction has no expiration or sunset date and is permanent, extending the deprivation in perpetuity. (See *Mathews*, *supra*, 424 U.S. at p. 341 [the possible length of the wrongful deprivation is an important factor in assessing the impact of official action on private interests].) Furthermore, there is no evidence that SCDA had in place a systematic review mechanism or removal procedure, whereby a person subjected to the injunction may subsequently be removed from its purview.[13] In sum, as *Rackauckas* found in evaluating the similar restrictions imposed

---

[13]    In the trial court proceedings, the prosecutor advised the court that SCDA reviewed the ongoing application of the injunction to enjoined persons on an ad hoc basis, to ascertain whether any one should be exempted from enforcement of the injunction. However, the prosecutor clarified that "[as] yet" there was no "formal" removal process "in place" and, consequently, a removal process was "not part of the People's record" in the instant matter. The trial court ruled that since a removal process was "not part of the record," it was "not going to consider that at this time." At oral argument in this appeal, counsel for the People stated that during the pendency of this appeal, SCDA had independently modified the procedures used to enforce the injunction to institute, among other things, a removal process. However, any such later modifications were not available to Sanchez and are not part of the instant record. We therefore have not considered them. Nor do we express any opinion as to their adequacy in relation to the procedural due process issue raised here.

22.

by the injunction at issue there, the private interests affected by the injunction are "truly weighty." (*Rackauckas*, *supra*, 734 F.3d at p. 1045.)

### (b) The risk of erroneous deprivation and the probable value of additional safeguards

Here, after obtaining the gang injunction by default against the Deep South Side Norteños gang and 12 named defendants, the SCDA began to serve the injunction on individuals who were not named or served as defendants in the original injunction proceeding, but rather were subsequently alleged to be active members of the Deep South Side Norteños (DSSN) gang by the SCDA. Although actual members of the DSSN can properly be bound by the injunction, due process concerns arise when the manner in which the SCDA decides who is an actual member of the DSSN itself creates a high risk of erroneous determinations.

More specifically, in the context of the instant injunction, individuals who were properly served in the original injunction proceeding clearly had notice of the proceeding and the opportunity to be heard on the question of whether they were covered gang members; accordingly, any due process concerns regarding enforcement of the injunction against them are alleviated. However, enforcement of the injunction against someone like Sanchez, who was not served in the original injunction proceeding and who, furthermore, was a minor at the time the injunction was granted, raises significant due process concerns in light of the important liberty interests at stake along with potential for error in the procedures used to identify additional, covered gang members.

The People have represented that the SCDA served the injunction on individuals it determined were "active" gang members or participants of the DSSN. "[F]or the purposes of a gang abatement injunction," "an active gang member is a person who participates in or acts in concert with" a gang, such that "[t]he participation … [is] more than nominal, passive, inactive or purely technical." (*People v. Engelbrecht* (2001) 88 Cal.App.4th 1236, 1258, 1261 (*Engelbrecht*); see *Broderick Boys*, *supra*, 149

23.

Cal.App.4th at p. 1517.) Furthermore, for purposes of inclusion in a civil gang injunction, the People have the burden of demonstrating active gang membership by "clear and convincing evidence" rather than a lower "preponderance" standard, in view of "the importance of the interests affected" by such an injunction. (*Engelbrecht*, 88 Cal.App.4th at p. 1256.)

For his part, Sanchez has maintained that he is not a covered gang member. Sanchez told the officer who arrested him in the incident underlying this case that he was not a gang member and should not be subjected to the injunction. A gang expert appointed by the trial court on behalf of Sanchez also opined in an expert report filed in the trial court that Sanchez was not a gang member. The record indicates that Sanchez had no criminal or arrest record prior to enforcement of the injunction against him, which has led to arrest and prosecution for criminal contempt in multiple cases. Nor is there any allegation or evidence that Sanchez has ever been judicially determined to be an active DSSN gang member for any purpose.

Under the second *Mathews* factor, we consider the nature of the inquiry as to whether an individual is an active gang member or participant; the adequacy of the procedures used to make this determination by the SCDA; the value of additional procedural safeguards; and the sufficiency of postdeprivation remedies. (*Mathews*, *supra*, 424 U.S. at p. 335; *Rackauckas*, *supra*, 734 F.3d at p. 1045.)

Our analysis under the second *Mathews* factor is set forth in detail below. We have considered the fact that determining whether an individual is an active gang participant for purposes of enforcement of a gang injunction is a complex endeavor. As counsel for the People acknowledged at oral argument, the determination is nonetheless left to one gang investigator within the SCDA, Froilan Mariscal, who "authored" the gang injunction and serves as the "injunction manager." Furthermore, the SCDA has yet to clarify how Mariscal made the initial determination that Sanchez was a covered gang

24.

participant, leading to service of the injunction on him.[14]  In addition, there is no process

for an affected individual in Sanchez's position to challenge the SCDA's conclusion,

prior to being arrested and prosecuted for allegedly violating the injunction.  This

situation creates a substantial risk of erroneous deprivation but the risk would be

substantially mitigated by provision of additional procedural protections.  As discussed

below, based on these considerations, we conclude that the second *Mathews* factor

weighs in Sanchez's favor.

(i) Nature of the Gang Membership Inquiry

Courts have recognized that the inquiry as to whether an individual is an active

gang member is a fact-intensive one, whereby "determining whether someone is involved

and the level of involvement is not a simple matter."  (*People v. Valdez* (1997) 58

Cal.App.4th 494, 506-507 (*Valdez*).)  As *Valdez* explained, "gangs are not public and

open organizations or associations like the YMCA or State Bar Association, which have a

clearly defined and ascertainable membership.  Rather, gangs are more secretive, loosely

defined associations of people, whose involvement runs the gamut from 'wannabes' to

leaders."  (*Id.* at p. 507.)  In addition, as *Colonia Chiques* noted with regard to the fluid

nature of the gang there, gang membership is not static but, rather, is "continually

---

**14**     The People have attached as an exhibit to their opening brief, an investigation
report by SCDA Gang Investigator Froilan Mariscal.  The report is dated December 13,
2012, over two years after Sanchez was served with the gang injunction.  In the report,
*which was not provided to the trial court*, Mariscal enumerates various reported police
contacts that Mariscal "utilized to document Carlos Sanchez as an active DSSN
member."  However, the report mostly lists contacts that occurred in the course of
enforcing the injunction against Sanchez, *after* it was served on him.  Furthermore, the
report is dated December 13, 2012, and fails to clarify how the SCDA actually
determined, at the time Sanchez was served with the injunction on August 17, 2010, that
Sanchez was an active DSSN member subject to the injunction.  For example, the report
does not clarify what information was available to and evaluated by the SCDA *prior to*
August 17, 2010, or whether any information available at that time suggested that
Sanchez was *not* a gang member but was disregarded by the SCDA.

25.

changing," in that "[n]ew members are joining the gang, while old members are leaving it or becoming inactive." (*Colonia Chiques, supra,* 156 Cal.App.4th at p. 41; see *Rackauckas*, *supra*, 734 F.3d at p. 1046, fn. 21 [describing gang membership as "fluid and often fleeting," and noting that "[m]ost juveniles belong to gangs for '1 year or less'"].) The STEP Act's definition of "criminal street gang" also encompasses groups "whether formal or informal," signifying that gangs often are loosely structured. (§ 186.22, subd. (f).)

Since gangs lack formalities that might provide objective and verifiable means of establishing membership, such as dues-paying lists, it is not usually possible to confirm gang membership with reference to objective criteria. Indeed, in closely and thoroughly considering the issue, *Rackauckas* concluded: "Determining whether an individual is an active gang member presents a considerable risk of error. The informal structure of gangs, the often fleeting nature of gang membership, and the lack of objective criteria in making the assessment all heighten the need for careful factfinding." (*Rackauckas*, *supra*, 734 F.3d at p. 1046.) Given the nature of the inquiry required to confirm gang membership, the risk of error is particularly great when the determination is made without any participation by, or opportunity to provide evidence on behalf of, the individual served with the injunction, as was the case here.

(ii)   The Adequacy of the Procedures Utilized by the SCDA and the Value of Additional Safeguards

Documentation submitted by the People reveals that Froilan Mariscal, a gang investigator in the SCDA—who "authored" the gang injunction and is the "injunction manager"—was tasked with identifying the individuals to be served with the gang injunction. In the original injunction proceeding in 2009, Mariscal averred in a declaration that the DSSN gang had around 50 active members. By 2012, 105

individuals had been served with the injunction based on Mariscal's determination that they were active participants in the DSSN.[15]

The People represented in the trial court that the determinations were made with reference to a range of criteria that were applied on a case-by-case basis, with reference to evidence gleaned from "field interviews, field contacts, police reports, law enforcement databases, and admissions, etc.," as well as from informants. Determinations were based on factors "such as": "jail/juvenile hall classification," "identification by reliable sources," "associations with gang members," "use of hand signs, symbols, words or phrases associated with the gang," "possession of gang tattoos," "self-admissions of gang membership," "involvement in activities consistent with gang activities," "physical evidence of gang association, i.e., gang rosters, drawings, photographs, bandanas, symbols," and "judicial finding of gang membership or participation."

Many of the factors considered—e.g., clothing, associations, information from informants—were not objective (in the sense of a dues-paying membership list, board-approved membership regulations, and similar bright-line methods of making a determination of group membership). On the contrary, as apparent from most of the factors and the types of documentation that were relevant to the determination, the process entailed assessing and weighing evidence to make factual determinations, including by making subjective judgments and credibility determinations. Despite the nuanced nature of the inquiry, here the SCDA unilaterally decided who would be subjected to the injunction's restrictions, without providing notice, access to evidence, or an opportunity to be heard to the affected persons. Consequently, the SCDA's

---

[15] Officer Binkley testified at Sanchez's preliminary hearing that Investigator Mariscal provided a list of people to the Modesto Police Department for purposes of service of the injunction; the list included Sanchez. Mariscal's role was also confirmed by counsel for the People at oral argument.

27.

determination as to whether an individual was an active gang member entailed a considerable risk of error.

A close look at some of the factors that were relevant to the determination of gang membership reveals that the process used by the SCDA was neither objective nor particularly reliable. Take for instance the "associating with gang members" criterion. Sanchez's gang expert explained in his expert report filed in the trial court that this factor is difficult to apply in practice because a person's familial and social relationships can be misperceived as gang-related relationships and result in misidentification of that person as an active gang member. Sanchez, for example, was served with the gang injunction along with his brother and at least one of his cousins, raising the possibility, to the extent association with family members was a factor in deeming Sanchez a gang member, that these associations were not necessarily gang related.

Similarly, factors such as "jail/juvenile hall classifications," "use of hand signs, symbols, words or phrases associated with the gang," "wearing of gang attire or colors," and "possession of gang tattoos," do not necessarily and conclusively correlate to "active gang membership." Sanchez's gang expert noted that, in some instances, these factors signify neighborhood affiliation or loyalty to family members rather than active gang participation. In the present context, for example, Deep South Side Modesto, one of the names of the gang enjoined by the injunction, is also the name of the neighborhood encompassed by the Safety Zone, and affiliation with one can be mistaken for affiliation with the other, as Sanchez's gang expert noted. Prior admissions of gang membership are also of variable evidentiary significance depending on the context and circumstances in which they were made. Such admissions, at times, connote merely a passive, nominal, or familial affiliation, and may be motivated by a need for protection because of neighborhood- or family-based affiliations. (See *Vasquez v. Rackauckas* (C.D. Cal. 2011) 203 F.Supp.3d 1061, 1071, overruled on other grounds in *Rackauckas*, *supra*, 734 F.3d 1025.)

28.

In addition, as *Rackauckas* explained, "the fact that the police observe an individual violate one of the [gang injunction's] terms is of little probative value in assessing whether that individual is in fact [a] … gang member. The [injunction] prohibits a wide variety of otherwise legal, quotidian conduct not directly correlated with the nuisance and criminal activities that gave rise to the [injunction]. Much of the behavior covered by the [injunction] can occur outside the presence of any other individual even putatively covered by the [injunction]." (*Rackauckas*, *supra*, 734 F.3d at p. 1047.)

Although determining whether a particular individual is actively "involved [in the gang] and the level of involvement is not a simple matter," here the determination was made unilaterally by the SCDA, or, more accurately, by a single gang investigator within the SCDA, without providing notice and an opportunity to be heard to the affected individual. (*Rackauckas*, *supra*, 734 F.3d at p. 1046; *Valdez*, *supra*, 58 Cal.App.4th at pp. 506-507.) As the SCDA alone made the determination that an individual could properly be subjected to the injunction's wide-ranging restrictions, the determination was rendered opaque and unreviewable at precisely the same time that the threshold for prosecution of that person was drastically lowered by virtue of approval of the injunction itself. (See *Englebrecht*, *supra*, 88 Cal.App.4th at pp. 1255-1256 [noting that because a gang injunction restricts lawful, commonplace activity, it is an extraoridinary remedy]; also see *Am.-Arab Anti-Discrimination Comm. v. Reno* (9th Cir. 1995) 70 F.3d 1045, 1069 (quoting *Joint Anti-Fascist Refugee Comm. v. McGrath* (1951) 341 U.S. 123 (Frankfurter, J. concurring)) ["'fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights'"].)

In Sanchez's case, the People have yet to specify the precise process—including all the factors considered and any evidence that was disregarded—by which he was deemed an active participant in the DSSN, prior to service of the injunction on him on August 17, 2010. We conclude the one-sided procedures used by the SCDA to identify

29.

purported active gang participants encompass a significant risk of error. In light of the nature of the inquiry at issue, additional procedural protections that characterize due process, including notice and an opportunity to be heard, would be of considerable value in mitigating the risk of error.

(iii) Sufficiency of Postdeprivation Remedies

In some instances, postdeprivation remedies may cure what would otherwise be an unconstitutional deprivation of protected interests.[16] In the trial court, the People contended that a jury trial at the culmination of criminal contempt proceedings was an adequate postdeprivation remedy that would cure any violation of procedural due process in subjecting Sanchez to the injunction. We cannot agree.

Officer Binkley testified that when the injunction was served on a person, the latter was provided with a map of the Safety Zone and a list specifying the activities and conduct he or she was prohibited from engaging in. As discussed above, the injunction sweeps broadly, prohibiting a range of basic liberties and everyday, lawful conduct. Further, the trial court noted, individuals alleged to have violated the injunction are "booked into jail" and either "stay in jail, or post bail," pending trial. In other words, a person who is served with the injunction must either comply with its restrictions or risk arrest. As for Sanchez, as long as he remains subject to the injunction, he remains at risk of arrest for violations of its terms, including the curfew provision and the restrictions on association and presence in public places. Furthermore, even were he to proceed to trial

---

**16** *Rackauckas* noted that "'in limited circumstances,'" "'deprivations of liberty'" may be cured by "'[p]ost-deprivation procedures'" that "'may provide adequate due process.'" (*Rackauckas*, *supra*, 734 F.3d at p. 1048, fn. 22; but see *Bailey v. Pataki* (2d Cir. 2013) 708 F.3d 391 ["'[w]here the State feasibly can provide a predeprivation hearing … it generally must do so regardless of the adequacy of a postdeprivation … remedy'"]; *Zimmerman v. City of Oakland* (9th Cir. 2001) 255 F.3d 734, 738 [holding postdeprivation remedies inadequate where a state officer "acted pursuant to some established procedure," as opposed to in "random, unpredictable, and unauthorized ways"].)

30.

in this matter and prevail, he would nonetheless remain subject to the injunction in perpetuity, and, in turn, to arrest for additional violations of its provisions. Given this scenario, jury trial in the instant contempt proceeding would not provide "full relief" from the deprivation effected by subjecting him to the injunction. (See *Mathews*, *supra*, 424 U.S. at p. 331; also see *Rackauckas*, *supra*, 734 F.3d at p. 1051.)

*Rackauckas's* analysis of the difference between a gang injunction and other, more narrowly focused injunctions is also instructive in this context. *Rackauckas* explained that while postarrest contempt proceedings might potentially constitute a sufficient postdeprivation remedy in relation to certain types of injunctions, they are not an adequate postdeprivation remedy for a gang injunction which imposes wide-ranging restrictions and creates a risk of arrest. With respect to the gang injunction there, *Rackauckas* explained:

> "[The gang injunction] proscribes a broad range of basic, daily activities by [the gang's] members, and it proscribes such conduct without regard to whether the individual is engaged in that conduct in concert with, as a member or agent of, or with the intent to further the purposes of the gang.
>
> "In these respects, this case differs from other contexts in which an injunction runs against an organization and its members, and, we shall assume for present purposes, unnamed members are accorded sufficient process through the opportunity to defend criminal contempt accusations. The abortion and labor cases, for example, involve injunctions restricting a narrow range of conduct—e.g., demonstrating in a certain location or with a certain object. Engaging in those activities is likely to be highly correlated with whether an individual is in fact a member of the enjoined organization, which had engaged in similar activities. In contrast, the [gang injunction] prohibits an enormous range of quotidian conduct that, on its face, is not indicative of an individual's gang membership, or any other connection to the enjoined gang.
>
> "Moreover, the difference in the scope of the injunctions in these various contexts is relevant because '[t]he more important the interest' affected by state action, 'and the greater the effect of the impairment, the greater the procedural safeguards the state must provide to satisfy due process.' [Citation.] Further, the lack of an inherent correlation between

31.

the enjoined activities and membership in the group covered by the [gang injunction] exacerbates the already significant risk of error in identifying accurately the members of [the gang]." (*Rackauckas*, *supra*, 734 F.3d at p. 1052.)

We conclude that, in light of the injunction's undeniable interference with protected liberty interests and the lack of adequate predeprivation procedural safeguards, a jury trial in contempt proceedings such as the instant one is insufficient to cure the deprivation of liberty, including jail time, to which Sanchez has been subject since being served with the injunction in 2010. (See *Rackauckas*, *supra*, 734 F.3d at p. 1052.)

In sum, the second *Mathews* factor—the risk of erroneous deprivation and the probable value of additional safeguards—weighs in Sanchez's favor.

> *(c)     The government's interest in failing to provide a predeprivation remedy*

Turning to the final prong of the *Mathews* analysis, we consider "the Government's interest" in providing (or not providing) specific procedures, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." (See *Mathews*, *supra*, 424 U.S. at p. 335.) Here, the trial court stated, "I don't have any doubt that the [district attorney] and law enforcement have a strong and important interest in controlling gangs in this particular neighborhood." We agree with the trial court that combatting gang violence is a critically important law enforcement goal. However, as the trial court correctly noted, the relevant inquiry under *Mathews* is whether the state has a significant interest in *failing to provide* a predeprivation process through which an individual can challenge the SCDA's determination that he or she is an active gang member subject to the injunction. (See *Rackauckas*, *supra*, 734 F.3d at p. 1052.)

The People do not argue that providing a predeprivation remedy to individuals who were not named and served in the original injunction proceeding is administratively or fiscally unfeasible. Nor did the People present any arguments or evidence to the trial

32.

court regarding the existence of a significant government interest in failing to provide a predeprivation remedy in connection with enforcement of the injunction.

In *Rackauckas*, the court concluded that the relevant government agencies there had not established a government interest in failing to provide procedural safeguards for the persons who were challenging application of the gang injunction in that case; specifically, the agencies "presented no evidence of "'an administrative, fiscal or other substantial burden[] in providing … pre-deprivation safeguards." (*Rackauckas*, *supra*, 734 F.3d at p. 1053, italics omitted.) *Rackauckas* pointed out that the same government agencies had avoided due process problems in the enforcement of other gang injunctions by "nam[ing] each defendant individually in the initial filing." (*Id.* at p. 1052.) *Rackauckas* further explained that, "at least two jurisdictions in California—San Francisco and Oakland—regularly provide some form of pre-deprivation process for individuals in anti-gang injunction proceedings, rather than simply seeking injunctions against the gang as an entity and its unnamed members." [17] (*Id.* at p. 1053.)

Although, like *Rackauckas*, we are not deciding the constitutionality of predeprivation mechanisms used in connection with other gang injunctions, it is clear that other jurisdictions have fashioned mechanisms under which a gang injunction can effectively be enforced by constitutional means. We conclude the final *Mathews* factor—like the first two factors—also weighs decisively in favor of Sanchez.

---

[17]    The City of Los Angeles has also offered various procedures in connection with enforcement of an anti-gang injunction, whereby individuals subjected to the injunction may challenge the underlying determination (made by the relevant public agency enforcing the injunction) that they were covered gang members. However, in *Youth Justice Coalition v. City of Los Angeles* (C.D. Cal. 2017) --- F.Supp.3d--- [2017 WL 3981122] the court nonetheless found that the City's "procedures do not adequately remedy the lack of pre-deprivation process." (*Id.* at *10.)

(4)    Conclusion

The record here demonstrates:  (1) the scope of the injunction is notably broad, whereby it interferes with a wide range of protected liberty interests; (2) Sanchez was not named and served in the original injunction proceeding and, indeed, was a minor at the time; (3) Sanchez has repeatedly asserted he is not a gang member and his court-appointed expert has come to the same conclusion; (4) the procedure used to make the determination of gang membership encompasses a significant risk of error; (5) the People have not specified the basis on which Sanchez was determined to be a covered gang member (including any evidence that was disregarded in making the determination), leading to service of the injunction on him; (6) additional procedural safeguards such as notice and an opportunity to be heard would be of considerable value; (7) in light of the important liberty interests at stake, the right to a jury trial in a criminal contempt action premised on a violation of the injunction is insufficient to provide a person in Sanchez's position with full relief; and (8) the People have not articulated, let alone demonstrated, *any* government interest justifying the failure to provide any procedural safeguards before subjecting individuals to the injunction.  On this record, we conclude that, under the *Mathews* balancing inquiry, provision of some predeprivation process was required before the gang injunction could be applied to Sanchez consistent with his right to procedural due process under the federal Constitution.  Here, Sanchez's procedural due process rights were violated.

Furthermore, in examining when procedural safeguards are required under the California Constitution, we similarly apply the *Mathews* balancing inquiry with the addition of a fourth factor:  the dignitary interest in informing individuals of the nature, grounds, and consequences of the action and in enabling them to present their side of the story before a responsible government official.  (*People v. Ramirez* (1979) 25 Cal.3d 260, 268; *Ryan v. California Interscholastic Federation* (2001) 94 Cal.App.4th 1048, 1071-1072.)  This dignitary interest encompasses the appearance of fairness to those involved.

34.

(See *People v. Hernandez* (1984) 160 Cal.App.3d 725, 747-748.) The California Constitution ultimately provides more due process protection than the federal Constitution alone. (*Today's Fresh Start*, *supra*, 57 Cal.4th at pp. 213-214.) Here, Sanchez had no notice or opportunity to be heard before he was subjected to an injunction with profound consequences for daily life, including family relationships, freedom of movement, and civic participation in the neighborhood in which he lives. The appearance-of-fairness factor under the California Constitution supports our conclusion that applying the injunction against Sanchez violated procedural due process.

We emphasize that Sanchez has not challenged the substantive terms of the injunction and our decision is not intended to, nor does it serve to undermine enforcement of the injunction against properly covered individuals. Gang injunctions are prophylactic measures that restrict the lawful, daily activities of covered individuals in an effort to prevent illegal activities from taking place. (*Rackauckas*, *supra,* 734 F.3d at p. 1056.) While we recognize the importance of preventing illegal activities by gang members, here the breadth of the injunction implicates important liberty interests and Sanchez was entitled to some constitutionally adequate process to determine his membership in the group covered by the injunction.[18]

Finally, we note that at oral argument, counsel for the People indicated that while this appeal was pending, the SCDA independently modified, on its own initiative, its procedures related to enforcement of the injunction, evidently to alleviate procedural due process concerns. We express no opinion on the constitutionality of these new procedures as their substance is beyond the scope of the present record and their constitutional sufficiency is not at issue in this matter.

---

[18] The People argue that the trial court erred by failing to allow the People to file additional briefing when it reconsidered its ruling on Sanchez's due process challenge. We need not address the merits of this claim because the People have not demonstrated that any error by the trial court was prejudicial.

## B. *Dismissal of the Contempt Charge*

Here the trial court correctly determined that the injunction could not be applied to Sanchez consistent with the federal Constitution unless Sanchez had access to a predeprivation remedy. Therefore, service of the permanent injunction on Sanchez had no effect and Sanchez could not be guilty of criminal contempt for violating its provisions. The trial court therefore properly dismissed the criminal contempt charge.[19]

## **DISPOSITION**

The judgment is affirmed.

_____

SMITH, J

WE CONCUR:


_____

HILL, P.J.


_____

POOCHIGIAN, J.

---

[19]    Sanchez has moved to strike five exhibits filed by the People with their opening brief (Exhibits A-E, numbering 59 pages). However, since we have ruled in Sanchez's favor, his motion to strike is denied as moot.